RHONDA L. CASSITY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cassity v. Commissioner
Docket No. 2545-85.
United States Tax Court
T.C. Memo 1987-181; 1987 Tax Ct. Memo LEXIS 177; 53 T.C.M. (CCH) 514; T.C.M. (RIA) 87181; April 6, 1987. Harvey G. Schneider and James R. Loranger, for the petitioner. Ronald J. Long, *178 for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in petitioner's Federal income tax for the taxable years 1975, 1976, 1977 and 1978 in the amounts of $166,730.93, $210,648.41, $225,715.20 and $51,404.14, respectively. The issues for our consideration are: (1) Whether Federal income tax returns for the years 1975, 1976, 1977 and 1978, filed in the names of petitioner and her husband, were joint returns, and (2) if they are joint returns, whether petitioner is relieved of liability as an "innocent spouse" under the provisions of section 6013(e). [1]
Some of the facts have been stipulated and are found accordingly. Petitioner resided in St. Louis County, Missouri, at the time of filing the petition in this case. Petitioner has been married to J. Douglas Cassity (husband) since October 30, 1965. Federal income tax returns for the 1975, 1976, 1977 and 1978 taxable years were filed in the names of petitioner and husband as joint returns at the Internal *179 Revenue Service Center at Kansas City, Missouri. Petitioner did not sign or review any of the four returns prior to their filing, nor did she file separate returns for the years in issue. Husband signed petitioner's name to each of the purported joint returns and caused their filing. Petitioner did not give husband express authorization to sign or file returns on her behalf. Petitioner was not involved in the audit conducted by respondent, which, during July 1983, resulted in husband's agreement to deficiencies for all four years, including additions to tax under section 6653(b). Thereafter, on November 5, 1984, respondent mailed a statutory notice to petitioner determining that she was liable for the income tax deficiencies (no additions to tax were determined against petitioner). Petitioner was a high school graduate and also took art classes during her one and only semester of college. She had no training or background in accounting, business or finance, with the exception of her employment as a secretary or receptionist through February 1970. From March 1970 and through the years in issue, petitioner was a housewife responsible for raising two children and otherwise was *180 unemployed. Husband began the practice of law September 1970. He was ambitious and hard-working and eventually tended toward real estate work. Husband became involved in syndication and tax shelter activity mainly concerning real property. Through the real estate activity he became involved in banking, integrating his legal, real estate and financing activity. As his involvement in these areas increased, husband began working longer and longer hours (usually leaving home about 3:00 a.m. and returning at 5:30 p.m.). Petitioner and husband argued about the extent of husband's working hours and whether he was spread too thin and neglecting his practice of law. [2] Husband did not conduct business at home. When petitioner was confronted with business papers for her signature, she would ask questions, refusing to sign unless the questions were answered. Husband was reluctant to discuss business matters with petitioner because of their disagreements over his work. When possible, husband would sign petitioner's name to documents rather than request that she personally sign them. [3] Occasionally, it was necessary for petitioner to attend a real estate closing and personally sign the *181 documents. [4] Husband thought that petitioner occasionally asked embarrassing questions at real estate closings or transactions and, accordingly, he signed her name to documents to avoid these situations and confrontations with petitioner. Although petitioner signed numerous documents during the years in question, she was not knowledgeable about husband's activities. *182 Husband and petitioner maintained several joint bank accounts during the years in question. Petitioner was responsible for operating the household and paying household expenditures. Husband made deposits in the various accounts. During the years in question, husband and petitioner wrote the following aggregate amounts of checks on joint accounts in each year: Total Checks Signed [5]
Year
Total Checks Written
By Petitioner
1975
$247,018.33  $54,388.66 1976
95,024.60
79,918.34
1977
78,094.72
76,309.28
1978
177,618.30 69,931.91
The returns filed by husband for the taxable years in issue reflected adjusted gross income, as follows: Adjusted Gross
Year
Income Reported
1975
$94,409.64
1976
101,566.75
1977
182,181.44
1978
256,823.23
The adjusted gross income reflected on the returns in issue are "net" amounts after having taken into consideration deductions, such as depreciation, for which there may not have been a corresponding cash outlay in the same taxable year. Petitioner *183 had no independent sources of income. The factual pattern in this case provides a classical setting for the generation of "innocent spouse" issues. Petitioner and her husband were married and they both worked while husband completed law school. During this period petitioner received Forms W-2 from employment as a secretary or receptionist and Federal income tax returns were filed on her behalf. [6] Husband completed law school and began the practice of law and petitioner assumed full-time responsibility for managing the household and raising the children. Under this division of responsibilities, petitioner was not involved in husband's law practice and business affairs and she did not receive W-2's or possess an independent source of income. Husband was successful and worked long hours, which among other subjects caused difficulties between petitioner and husband. As a result, husband avoided any business subject discussions with petitioner by signing her name to documents, including Federal income tax returns. Husband had substantial unreported income and/or overstated deductions during this period and agreed to deficiencies determined by respondent, including additions to *184 tax for fraud. Petitioner received a statutory notice wherein respondent determined that she was liable for the income tax deficiencies without any additions to the tax. Petitioner had not seen or signed the returns in issue and had no reason to believe that she was responsible for reporting income. [7]
The issues *185 presented by this factual pattern are whether petitioner tacitly consented to "jointly filed" returns and if she did, whether she is an "innocent spouse" within the meaning of section 6013(e). [8]
Section 6013(a) authorizes a husband and wife to make jointly a single return of their income, except in limited circumstances. Section 1.6013-1(a)(2), Income Tax Regs., requires that: "A joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses." Numerous courts have found a joint return even though only one spouse signed when a joint return was intended by both spouses. See Howell v. Commissioner,10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949); Kann v. Commissioner,18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251 (3d Cir. 1953); *186 Federbush v. Commissioner,34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963). The question of the spouse's intention is one of fact. Federbush v. Commissioner, 325 F.2d at 1, 2. Respondent has argued that his determination that a return is joint is "prima facie correct" and that petitioner has the burden of proving error, and further, where one spouse testifies that he signed the other spouse's signature, the burden of proof is on the taxpayer to show that signature to be unauthorized. Respondent cites Evans v. Commissioner,T.C. Memo. 1982-700, for this proposition. We agree with respondent's analysis, as far as it goes. Where one spouse signs both names without authorization or knowledge of the other, which is the factual setting here, the burden of going forward with the evidence shifts to respondent to produce additional evidence showing that the non-signing spouse intended to file or tacitly consented to filing of a joint return. O'Connor v. Commissioner,412 F.2d 304, 309 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court. In this case petitioner did not *187 sign the purported joint returns for the taxable years 1975, 1976, 1977 and 1978. It is also clear that petitioner was not consulted or advised about a joint return status or the fact that any return was filed for the years in question. Accordingly, the burden of going forward with the evidence shifted to respondent to show that petitioner either intended to file or tacitly consented to the filing of a joint return for the years in issue. Respondent's position that petitioner was required to file returns for each of the years 1975 through 1978 is based primarily on the evidence that she had returnable income in each of these years. In support of this position, respondent offered numerous deeds and other real estate transactional documents, upon which petitioner's name appeared. These documents were all connected to husband's tax shelter promotional activity. The realty transactions occurred in Missouri and respondent made an effective legal presentation showing that tenancy by the entirety properties in Missouri could be attributable one-half to each spouse. This legal principle apparently applies to realty and personalty and to income from the property, as well as gain from *188 the disposition of the property. After establishing that state law could, under some circumstances, cause the attribution of one-half of the income to petitioner, respondent goes on to theorize that petitioner, under section 6012, was required to file an income tax return during the years in issue. [9] Respondent in concluding this syllogism argues that the requirement to file a return shows that petitioner must have intended to (or possibly tacitly consented to) file a joint return with husband. After carefully considering the record and the credibility of petitioner and husband, we find respondent's premises to be fallacious. Husband was involved in a law practice, numerous complex real estate transactions and, at times, banking activity. He worked long hours (left home at 3:00 a.m. and did not return until 5:30 *189 p.m.) and avoided discussing any business matter with petitioner. Other than arguing with husband that he was neglecting his law practice and spreading himself too thin, petitioner was unaware of husband's business activities. Petitioner did sign a number of real estate documents, but she did so under the impression that her signature was perfunctory and only necessary because of her marital relationship. Petitioner, with no other source of income and no knowledge of the contents of the purported 1975, 1976, 1977 and 1978 joint income tax returns filed by husband, would not have known of her responsibility, if any, to file a return for the years in issue. Even if she were aware of a requirement to file a return, that would not conclusively, in and of itself, show that she intended or consented to the filing of a joint return. Petitioner did cause returns to be filed (1965 through 1970) when she was aware of her income from wages as a secretary and receptionist. Petitioner did sign and intend to file a 1971 joint income tax return with husband. [10] Unlike other cases where we have found intent or consent to a joint return, petitioner here did not have separate sources of income *190 or knowledge of her spouse's business activity. Moreover, petitioner had a propensity to question the need for her signature on documents and may not have signed the tax returns for 1975 through 1978 if they had been presented to her for that purpose. The record in this case does not reflect a continuous pattern of joint filing under conditions from which we could imply or find petitioner's tacit consent. The record reveals only one return where petitioner agreed to execute a joint return where she may have had no income of her own. Furthermore, we are not able to determine with any certainty whether petitioner filed joint returns for the 1965 through 1970 years, when she did have separate reportable income. Although there was a clear division of responsibility between petitioner and her husband, based upon the facts of this case we cannot find that petitioner intended to or tacitly consented to file a joint return with her husband for the taxable years 1975, 1976, 1977 and 1978. *191 To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Husband's business activity went awry and on Dec. 18, 1981, he pled guilty to conspiring to use and using letters of credit in violation of 18 U.S.C. sec. 371↩ and falsifying an income tax return (Elm Lane Limited Partnership for the taxable year 1977) in violation of sec. 7206(1). He was sentenced to two years' imprisonment which was converted to six months' incarceration and three years' probation. 3. Petitioner's signature was required along with husband's for guarantor purposes and/or to release or convey any marital interest she may have had to property being conveyed in connection with husband's real estate activity. On occasion, petitioner and husband were shown as tenants by the entirety. Respondent identified several real estate transactions where petitioner signed her name and some profit or gain was realized. The record does not reflect, however, whether the real estate transactions, for which petitioner knowingly signed documents, resulted in an overall gain or loss. ↩
4. Apparently husband was allowed to sign petitioner's name on some real estate documents and on other occasions petitioner's absence was not tolerated by the other parties to the transaction.↩
5. Most of the checks signed by petitioner were for "household" purposes and accordingly for the benefit of petitioner's family.↩
6. The record is unclear whether individual or joint returns were filed during this period. Petitioner did recall that she did not prepare or personally file the returns, but could not recall or may have never known whether the returns were filed in individual or joint status. ↩
7. Petitioner had signed numerous documents concerning real estate transactions of husband, but did so under the impression that her signature was necessary solely because of her marital relationship with husband. Petitioner's background and testimony reflected that she had no understanding of business matters or the import or effect of the documents she was requested to sign. On numerous occasions husband would not request petitioner to sign where the other parties to the transaction did not question petitioner's absence from a closing and petitioner's name would be signed by husband.↩
8. Respondent argues, in support of his conclusion that petitioner intended to file a joint return, that under Missouri law one-half of the income or gain from real property owned by husband and wife is attributable to each. The record reflects that petitioner was not aware of this alleged income or her possible legal entitlements.↩
9. Respondent makes the same reference and argument concerning the joint checking accounts of petitioner and husband, but we are unable to see how the checking account produced reportable income. Possibly respondent's reference here is indirect and relates to the fact that husband deposited what could have been gain or income in these accounts during the years.↩
10. The record does not reflect whether petitioner had income of her own for the 1971 taxable year or whether she signed and "joined" in the return even though she did not have any separate income.↩