T.C. Summary Opinion 2003-71

UNITED STATES TAX COURT

PAMELA RENEE WIGGINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4118-01S.                Filed June 11, 2003.

Pamela Renee Wiggins, pro se.

<u>Dustin M. Starbuck</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was filed in
accordance with the provisions of sections 6015(e)(1) and 7463 of
the Internal Revenue Code in effect at the time the petition was
filed.  The decision to be entered is not reviewable by any other
court, and this opinion should not be cited as authority.

In reliance upon the provisions of section 6015, petitioner
made an administrative request for relief from a 1992 Federal

income tax liability. That liability is based in part on an unpaid liability reported on a timely filed joint 1992 Federal income tax return, and in part upon a deficiency determined and assessed several years later. Petitioner's request was denied in a notice of final determination issued by respondent on February 21, 2001. She timely petitioned this Court for review of respondent's determination. See sec. 6015(e).

The issue for decision is whether respondent's refusal to relieve petitioner from liability under section 6015 with respect to a 1992 Federal income tax liability is an abuse of discretion. We hold that it was not, but for a reason other than that advanced by respondent.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Roanoke, Virginia.

Petitioner and Peter Stimeling (Mr. Stimeling) were married to each other on June 9, 1990. They separated in February 1993 and were divorced on October 25, 1994. During 1992, petitioner and Mr. Stimeling worked together as employees of Valley View Associates, Ltd. Each received a Form W-2, Wage and Tax Statement, for that year on which the following information is reported:

|  | Wages | Federal Income Tax W/H |
|---|---|---|
| Petitioner | $23,708 | $3,001 |
| Mr. Stimeling | 34,707 | 5,078 |

During 1992, Mr. Stimeling was also the sole proprietor of S&S Repairs, a business that provided janitorial and repair services.

Mr. Stimeling asked petitioner if she would agree to file a joint 1992 Federal income tax return, even though they were separated at the time and soon to be divorced. Petitioner agreed, expecting to see and sign the return after it had been prepared and before it was mailed to be filed. In prior years (presumably 1990 and 1991), petitioner filed joint Federal income tax returns with Mr. Stimeling. For each of those years the return was prepared by a paid income tax return preparer, reviewed by petitioner, and signed by petitioner.

The same paid income tax return preparer that had prepared petitioner's returns for previous years prepared what purports to be a joint 1992 Federal income tax return for petitioner and Mr. Stimeling (the joint return). The joint return was received, timely filed, and processed by respondent. The income reported on the joint return consists of the wages reported on the above-mentioned Forms W-2 and the net profit reported on a Schedule C, Profit or Loss From Business, for S&S Repairs. Taxable income reported on the joint return is computed taking into account itemized deductions. The "total tax" liability reported on the

joint return, i.e., $13,643, takes into account the section 1 tax applicable to the taxable income reported on the joint return and the section 1401 tax (self-employment tax) applicable to the net profit reported on the Schedule C.  Against this amount, Federal income tax withholdings, as reported on the above-mentioned Forms W-2, are applied, resulting in an amount due of $5,768, none of which was paid with the joint return.

Petitioner neither reviewed nor signed the joint return. She did not authorize Mr. Stimeling to sign this or any other Federal income tax return on her behalf.

Toward the end of 1993 or the beginning of 1994, petitioner learned that respondent was attempting to garnish the wages of Mr. Stimeling in order to collect the then-outstanding 1992 Federal income tax liability.  In order to avoid having her own wages garnished (and to avoid the attendant embarrassment in her workplace), she entered into an installment agreement with respondent with respect to that liability.  She made the following payments in accordance with that installment agreement:

| Date | Payment |
| --- | --- |
| January 27, 1994 | $175 |
| February 7, 1994 | 175 |
| February 25, 1994 | 175 |
| March 29, 1994 | 175 |
| April 28, 1994 | 175 |

Thereafter, refunds claimed on her individual Federal income tax returns filed for the years 1993, 1994, and 1995 were applied to the outstanding 1992 liability as follows:

| Date | Amount of Refund |
| --- | --- |
| August 25, 1995 (1993 refund) | $1,342 |
| August 25, 1995 (1994 refund) | 1,876 |
| April 15, 1996 (1995 refund) | 807 |

On May 23, 1995, respondent issued a notice of deficiency to petitioner and Mr. Stimeling that indicated respondent had determined a deficiency of $588 in their 1992 Federal income tax. The deficiency results from the reduction of a claimed itemized deduction for interest expense and inclusion of interest income not reported on the joint return. A petition to this Court was not filed in response to that notice and the deficiency was assessed.

On September 25, 1995, petitioner filed an individual 1992 Federal income tax return as a married person filing a separate return (the separate return). On the separate return, petitioner (1) reported the wages previously attributed to her on the joint return; (2) included what appears to be the interest income referenced in the notice of deficiency; and (3) computed her Federal income tax liability taking into account the standard deduction appropriate to her filing status. She applied the Federal income tax withholdings from her wages taken into account

previously on the joint return against the tax shown on the return and claimed a refund of $141, which she received in due course.

In a Form 8857, Request for Innocent Spouse Relief, signed by petitioner and dated November 5, 1998, petitioner requested section 6015 relief. The Form 8857 used by petitioner does not reflect the repeal of section 6013(e) and enactment of section 6015. Nevertheless, it appears that respondent considered her claim in accordance with the provisions of section 6015. In this regard, on February 21, 2001, in a notice of final determination, respondent advised petitioner that she was not entitled to relief under subsections (b), (c), or (f) of section 6015.

Discussion

We are somewhat perplexed by the series of events just described. Of particular concern is the fact that the untimely separate return was processed after respondent had previously treated the joint return as petitioner's and issued a notice of deficiency to her based upon the information and items reported on the joint return.

In her administrative request for relief petitioner apparently claimed that she neither authorized nor consented to the joint return. Petitioner's claim on this point was addressed in a letter dated April 29, 2002, in which respondent's Appeals officer stated:

It would appear that you allowed your husband to prepare a joint return and to sign your name to it. You filed a separate return 30 months later. That action and the other facts of the case are consistent with changing one's mind, not with having the intent to file separately initially.

Based upon that conclusion, which is inconsistent with the treatment of the separate return, respondent's consideration of petitioner's claim for section 6015 relief proceeded as though petitioner filed a joint Federal income tax return for 1992.

In the petition, petitioner alleges that, with respect to the joint return, Mr. Stimeling "filed our 1992 taxes without my signature. * * * I kept asking him when I was going to need to sign it. Finally he told me he had signed it." At trial, petitioner readily admitted that she agreed to file a joint return with Mr. Stimeling, but with the expectation that before the return was filed she would have the opportunity to review and sign the return. She further explained that she agreed to the installment agreement in order to avoid embarrassment in her work place.

Petitioner's credible trial testimony supports the allegations made in the petition. Petitioner did not review or sign the joint return before it was filed. Furthermore, we accept her claim that she did not authorize her former spouse to sign her name to the joint return.

Respondent's reasons for processing the separate return after the joint return have not been explained. Nevertheless,

we are satisfied that the separate return is petitioner's 1992 Federal income tax return, and, under the circumstances, the joint return was not made pursuant to a valid election on petitioner's part. Cf. <u>Cassity v. Commissioner</u>, T.C. Memo. 1987-181; see sec. 1.6013-1(a)(2), Income Tax Regs., sec. 1.6061-1(a), Income Tax Regs. Petitioner's agreement to file a joint return with Mr. Stimeling at his request did not authorize him to sign the return on her behalf or to file it without first allowing her to review it.

It follows that petitioner's request for section 6015 relief from the 1992 Federal income tax liability currently assessed against her must be denied because she did not file a joint return for that year.[1] See <u>Raymond v. Commissioner</u>, 119 T.C. 191, 195-197 (2002). Respondent's denial of section 6015 relief for that year, albeit based upon different grounds and perhaps ironically, cannot be considered an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[1] Taking into account the sec. 6511 period of limitations, petitioner's remedy, if any, appears to be a traditional claim for refund.